UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Q. GRADY MINOR &
ASSOCIATES, LLC,

      Plaintiff,

v.                                      Case No:   2:24-cv-634-JLB-KCD

BLUESHORE ENGINEERING,
LLC, MICHAEL HERRERA,
JAYCE STRICHERZ, JEREMIAH
DEFORGE, and IVAN VELEZ,

      Defendants.
_____/

## ORDER

This matter is before the Court on Plaintiff Q. Grady Minor & Associates, LLC's ("Plaintiff" or "GradyMinor"), Amended Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 7), wherein GradyMinor seeks to: (1) require Blueshore Engineering, LLC ("Blueshore"), along with Michael Herrera, Jayce Stricherz, Jeremiah DeForge, and Ivan Velez (together, the "Individual Defendants" and together with Blueshore, "Defendants") to return certain GradyMinor files and documents in their possession; (2) enjoin Blueshore and the Individual Defendants from soliciting or performing engineering services for any current or former GradyMinor client while Blueshore or the Individual Defendants remain in possession of any confidential or proprietary GradyMinor files and documents; (3) enjoin Blueshore and the Individual Defendants from soliciting any GradyMinor employees to work for Blueshore while Blueshore or the

1

Individual Defendants remain in possession of any confidential or proprietary GradyMinor files and documents; and (4) require Blueshore and the Individual Defendants to make certain electronic devices available for forensic imaging (Doc. 7 at 21–22).

GradyMinor filed this lawsuit on July 9, 2024.  (Doc. 1).  GradyMinor brings claims against Defendant for violation of the Federal Defend Trade Secrets Act of 2016 (the "DTSA") (Count I); violation of the Computer Fraud and Abuse Act of 1986 (the "CFAA") (Count II); misappropriation of trade secrets under the Florida Uniform Trade Secrets Act (the "FUTSA") (Count III); breach of fiduciary duty (Count IV); tortious interference (Count V); conspiracy (Count VI); and preliminary and permanent injunctive relief (Count VII).  (*Id.* at 6—12).

For the reasons explained below, the Court concludes that GradyMinor has demonstrated, at this stage, a likelihood of success on the merits of its DTSA claim, a likelihood of irreparable injury in the absence of a restraining order issued before Defendants can be heard in opposition, and that the equities weigh in its favor.  Accordingly, GradyMinor's amended motion for a temporary restraining order (Doc. 7) is due to be **GRANTED** to the extent that a temporary restraining order shall issue as set out further below.  The Court will set a hearing on GradyMinor's motion for preliminary injunction by separate order.

## JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Plaintiff's state law claims

pursuant to 28 U.S.C. § 1367(a). Based on the allegations of the Verified Complaint, the Court concludes that it can properly exercise personal jurisdiction over Defendants and that venue properly lies in the Middle District of Florida. *See* 28 U.S.C. § 1391.

## FACTS[1]

In its Verified Complaint, GradyMinor alleges that the Individual Defendants are "former key and trusted GradyMinor employees" who had access to GradyMinor's "confidential and proprietary information, work product, and trade secrets." (Doc. 1 at ¶ 10). According to the Verified Complaint, the Individual Defendants resigned from GradyMinor in June 2024 to work for Blueshore, a competing engineering firm they formed while still working for GradyMinor. (Doc. 1 at ¶ 11). Plaintiff also alleges that "[a]lmost immediately, the Individual Defendants began soliciting GradyMinor's clients and inducing them to terminate their contracts with GradyMinor." (*Id.*)

---

[1] The Supreme Court has previously stated that "all of the well-pleaded allegations of [a] complaint and uncontroverted affidavits filed in support of [a] motion for a preliminary injunction are taken as true." *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976). Some courts in this circuit have applied that rule to review of requests for temporary restraining orders as well. *See Am. Builders and Contractors Supply Co. Inc. v. McPherson*, No. 3:23cv24132-MCR-HTC, 2023 WL 11760715, at *1 n.2 (N.D. Fla. Sept. 12, 2023) (citations omitted) (Plaintiff's human resources manager "verified the complaint and authenticated the documents attached to the TRO motion. The Court accepts the well-pled allegations of the Amended Verified Complaint and the supporting affidavit as true for purposes of this Order"); *Welsh v. Martinez*, No. 2:22-cv-216-JLB-NPM, 2022 WL 2356971, at *1 n.1 (M.D. Fla. June 30, 2022) (citing *Eldrod*, 427 U.S. at 350 n.1) (in the context of resolving a motion for a temporary restraining order, "[g]iven the case's procedural posture, the facts will be presented in a light most favorable to [Plaintiff]").

As an example of this, Plaintiff claims that "on June 12, 2024, Blueshore delivered a notice to GradyMinor claiming that five (5) GradyMinor clients had requested their projects . . . be transferred to Blueshore" and that "[t]here is no way these clients would have independently contacted Blueshore without the Individual Defendants contacting them first to leverage the relationships they fostered with the clients at GradyMinor's expense." (*Id.*)  Plaintiff also states that on June 13, 2024, the same day that defendant Velez formally resigned from GradyMinor, defendant Stricherz "inadvertently emailed Herrera's GradyMinor email address . . . [and] attached a set of Development Order Plans to her email that Blueshore was preparing for one of GradyMinor's clients, commenting that the 'layout Ivan has been setting up' was 'looking hella good!'" (*Id.* at ¶ 12).  Plaintiff alleges that "[c]reating the Development Order Plans between June 4, 2024 and June 13, 2024 without GradyMinor's confidential and proprietary CAD files would have been impossible." (*Id.*; *see also* Doc. 7-1 at ¶ 6).

GradyMinor explains that it retained LCG Discovery Experts ("LCG"), a digital forensics and cyber security firm, to inspect the computers the Individual Defendants used at GradyMinor.  (Doc. 1 at ¶ 13).  LCG reports that the information found was "consistent with file transfer activity during similar investigations" (Doc. 7-10 at ¶¶ 4, 7) and that "[a]ccessing a personal cloud account while simultaneously traversing company network and directories provides the opportunity for the user to upload files to that cloud storage account, however, LCG

4

would need access to that cloud storage account for analysis to assess the extent to which data may have been transferred." (Doc. 7-11 at ¶ 3).

## DISCUSSION

Federal Rule of Civil Procedure 65 provides that the Court may issue a temporary retraining order without written or oral notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

The Court may grant a temporary restraining order if Plaintiff demonstrates: (1) a substantial likelihood of success on the merits; (2) a likelihood of suffering irreparable injury without the restraining order; (3) that the threatened injury to it outweighs the harm the restraining order would cause other litigants; and (4) that the restraining order would not be adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001). "The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005) (per curiam). A temporary restraining order is an "extraordinary remedy" to which the Court should "pay particular regard for the

5

public consequences" of granting. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

## I.     Substantial likelihood of success on the merits

Plaintiff asserts a claim against Defendants for violation of DTSA and FUTSA. (Doc. 1 at ¶¶ 15, 17). "Both the federal [DTSA] and [FUTSA] authorize a court to grant an injunction to prevent 'actual' or 'threatened' misappropriation of a 'trade secret.'" *Primo Broodstock, Inc. v. Am. Mariculture, Inc.*, No. 2:17-cv-9-FtM-29CM, 2017 WL 1502714, at *10 (M.D. Fla. Apr. 27, 2017) (citing 18 U.S.C. § 1836(b)(3)(A)(i); Fla. Stat. § 688.003(1)).

Under the DTSA, the term "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information" if "the owner thereof has taken reasonable measures to keep such information secret" and "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). Thus, Plaintiff must establish that Defendants: "(i) possessed 'information' of 'independent economic value' that (a) was lawfully owned by [Plaintiff] and (b) for which [Plaintiff] took reasonable measures to keep secret, and (ii) 'used' and/or 'disclosed' that information, despite (iii) a duty to maintain its secrecy." *Primo Broodstock, Inc.*, 2017 WL 1502714, at *10 (citing *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998)). "In a trade secret action, the plaintiff bears the burden of demonstrating

6

both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *Am. Red Cross*, 143 F.3d at 1410 (citation omitted).

Plaintiff claims that Defendants "misappropriated GradyMinor's confidential and proprietary information and trade secrets through mass downloads of GradyMinor's electronic files to external storage devices and online storage platforms." (Doc. 1 at ¶ 13). Plaintiff's President, Justin Frederiksen, indicates that this information "has independent economic value and allows GradyMinor to remain competitive in the engineering industry." (Doc. 7-1 at ¶ 10). He explains that "[t]hese files are created in CAD software programs, which take hours (sometimes hundreds of hours) to create," that "[u]sing CAD software requires extensive training and practice," and that the information on GradyMinor's G Drive "contains confidential customer proposals that contain GradyMinor's ideas for client projects and [its] pricing and incentives," which "would be extremely valuable to a competitor of GradyMinor because they could use it to steal GradyMinor's ideas and work product and undercut GradyMinor's pricing." (Doc. 7-1 at ¶ 10).

Plaintiff also alleges that the Individual Defendants "signed and agreed to GradyMinor's Computer Network and Internet Access Policy which prohibits the unauthorized use of GradyMinor's computers and networks and dissemination of GradyMinor's confidential information and trade secrets." (Doc. 1 at ¶ 10; *see also* Doc 7-1 at ¶ 11). Mr. Frederiksen further explains that "GradyMinor's documents and data are stored on password-protected drives." (Doc. 7-1 at ¶ 11). Finally,

7

Plaintiff alleges that "Blueshore and the Individual Defendants have and continue to use GradyMinor's confidential and proprietary information to directly compete against GradyMinor and tortiously interfere with GradyMinor's existing client contracts and employment relationships." (Doc. 1 at ¶ 14).

Taking these factual allegations and the declarations filed in support of the Motion as true, the Court finds that GradyMinor has demonstrated a substantial likelihood of success on the merits of its misappropriation of trade secrets claims under the DTSA.

Because Plaintiff established a likelihood of success on the merits as to the DTSA claim, the Court declines at this juncture to address the remaining claims. *See Sapphire Consulting Servs. LLC v. Anderson*, 2021 WL 1053276, at *3 (M.D. Fla. Feb. 12, 2021) (citation omitted) ("When a plaintiff asserts multiple claims as a basis for a preliminary injunction, the plaintiff 'need only establish a substantial likelihood of success on one claim.'").

## II.    Irreparable injury

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. V. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990).  Plaintiff argues that it faces a likelihood of irreparable injury absent a temporary restraining order because damages cannot adequately compensate for the loss of, among other things, trade secrets and its clients.  (Doc. 7 at 16–17).

Eleventh Circuit case law dictates that "the loss of customers and goodwill is an irreparable injury." *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (internal quotation marks omitted). Moreover, although the Eleventh Circuit has not explicitly found as much, some courts within this circuit have found that "[i]rreparable harm is presumed when use of customer lists and solicitation of customers occurs." *See Convergent Nonprofit Solutions, LLC v. Wick*, No. 6:19-cv-1157-Orl-40DCI, 2019 WL 7423549, at *7 (M.D. Fla. Sept. 5, 2019) (quoting *Lynch v. Silcox*, No. 01-8800-CIV, 2001 WL 1200656, at *5 (S.D. Fla. Oct. 4, 2001)).

The Verified Complaint alleges that "Blueshore and the Individual Defendants willfully and intentionally interfered with GradyMinor's existing contracts with its clients . . . by using GradyMinor's confidential and proprietary information and trade secrets to induce such clients . . . to terminate their contracts . . . with GradyMinor" (Doc. 1 at ¶ 19) and Mr. Frederiksen believes that even after receiving a cease-and-desist letter from Plaintiff, Blueshore and the Individual Defendants "continue to use GradyMinor's confidential and proprietary information to directly compete against GradyMinor and tortiously interfere with GradyMinor's existing client contracts and employment relationships" (Doc. 7-1 at ¶ 9).

Plaintiff has provided sufficient evidence for this Court to find that the harm to it is ongoing and immediate, that it cannot be undone through monetary remedies alone, and that if Defendants are not immediately enjoined from using the

9

confidential information obtained from GradyMinor, GradyMinor stands to lose more of its clients.

Accordingly, Plaintiff has provided sufficient evidence that it will likely be irreparably injured absent a restraining order. *See Convergent*, 2019 WL 7423549, at *7 (in the context of a preliminary injunction, "[t]he evidence support[ed] a finding that the Defendants misappropriated Convergent's trade secrets over several months to position Defendant Wick's consulting firm to solicit Convergent's customers. Accordingly, Convergent ha[d] suffered and [would] continue to suffer irreparable harm in the absence of an injunction.").

Moreover, in compliance with Federal Rule of Civil Procedure 65(b)(1)(B), Plaintiff's counsel indicated that he would email a copy of the Motion to Defendants' Florida counsel and request that he attend any hearing. (Doc. 7 at 21, 23). The Court is satisfied with Plaintiff's counsel's efforts to give notice to the Defendants in accordance with Rule 65(b)(1). Additionally, as explained above, the Court finds that there is sufficient evidence that irreparable injury is ongoing and will result to Plaintiff before Defendants can be heard in opposition. *See* Fed. R. Civ. P. 65(b)(1)(A).

### III. Balance of harms

The balance of harms weighs in favor of granting a temporary restraining order. If a restraining order is not granted, Defendants can continue to use GradyMinor's trade secrets and confidential information to take away GradyMinor's customers and benefit from information that GradyMinor spent hours obtaining.

Moreover, assuming the truth of the allegations in the Verified Complaint, Plaintiff owns the trade secrets at stake. *See Truepenny People LLC v. Cota*, No. 3:16cv424/MCR/CJK, 2016 WL 9308534, at *2 (N.D. Fla. Oct. 18, 2016) ("[B]ecause Plaintiff owns the trade secrets and confidential and proprietary information is at stake, the harm to Plaintiff outweighs any threat of potential harm to the Defendant from the injunction."); *cf. Delta T, LLC v. Kale Fans America S.A. De C.V.*, No. 6:20-cv-170-Orl-40EJK, 2020 WL 3250188, at *4 (M.D. Fla. Feb. 3, 2020) (in the trademark infringement context, "[a]lthough Defendant possibly stands to lose sales of its allegedly counterfeit and infringing products if the temporary restraining order is issued, this will not constitute a legitimate hardship because Defendant has no right to engage in counterfeiting and infringing activities.").

## IV. Public interest

Finally, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citations omitted). The Court agrees with other courts that have found that "the public interest is served by protecting trade secrets . . . ." *Freedom Medical, Inc. v. Sewpersaud*, 469 F.Supp.3d 1269, 1279 (M.D. Fla. 2020) (citation omitted); *see also All Leisure Holidays Ltd. v. Novello*, No. 12-62328-CIV, 2012 WL 5932364, at *6 (S.D. Fla. Nov. 27, 2012) ("The Court concludes that entry of a TRO to protect trade secrets serves the public interest.").

## V. Bond requirement

Federal Rule of Civil Procedure 65(c) specifies that the Court "may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "[T]he amount of security required . . . is a matter within the discretion of the trial court. . . ." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (citation omitted).

Plaintiff has not suggested an amount for the bond and indicates that no bond is necessary because it is confident that it will succeed on the merits. (Doc. 7 at 18–19). In light of the competing interests at hand, the Court finds that a security bond of $50,000 is sufficient to protect Defendants against loss associated with an erroneous injunction. Thus, the Court will require Plaintiff to post a bond of $50,000. The amount of the bond may be revisited at the time set for the preliminary injunction hearing.

## VI. Scope of restraining order

While Plaintiff has demonstrated entitlement to a temporary restraining order, the Court declines to issue a restraining order of the breadth requested by Plaintiff. At this early stage and before Defendants have had a real opportunity to respond, the Court finds that Plaintiff has not sufficiently demonstrated the need for Defendants to submit their computers and electronic devices for forensic

analysis. The Court may revisit this issue, if appropriate, at the hearing on the motion for preliminary injunction.

Moreover, the Court declines to require Defendants to return files at this time because the scope of which files actually belong to Plaintiff is unclear to the Court at this time. If Defendants are barred from using Plaintiff's trade secrets, the potential harm to Plaintiff is minimal. The Court may also revisit this issue, if appropriate, at the hearing on the motion for preliminary injunction.

## CONCLUSION

Because Plaintiff has shown, at least at this stage, a substantial likelihood of success on its DTSA claim, a likelihood of irreparable injury in the absence of an injunction before Defendants can be heard in opposition, and that the equities weigh in its favor, Plaintiff has met its burden of establishing entitlement to a temporary restraining order.

Accordingly, it is **ORDERED**:

1. Plaintiff's Amended Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 7) is **GRANTED in part** as set forth herein.
2. Defendants shall not, directly or indirectly, use any confidential or proprietary GradyMinor files or documents.
3. Defendants shall not, directly or indirectly, solicit or perform engineering services for any current or former GradyMinor client while any Defendant remains in possession of any confidential or proprietary GradyMinor files or documents.

4. Defendants shall not destroy or alter any electronic device or account, including flash drives, external hard drives, and cloud-based storage accounts, that any of the Individual Defendants had access to since March 1, 2024 that, at any time, contained any confidential or proprietary GradyMinor files or documents.

5. Plaintiff will post a $50,000 bond with the Clerk before 5:00 p.m. on July 15, 2024.

6. This Temporary Restraining Order shall remain in effect for fourteen days unless any party seeks relief otherwise. The Court will set a hearing on GradyMinor's motion for preliminary injunction by separate order.

7. No later than five (5) days from the date of this Order, Plaintiff shall serve Defendants with process, including a copy of all pleadings in this case and this Order, and file proof of same.

**ORDERED** at Fort Myers, Florida on July 10, 2024, at 6:30 p.m.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE